[No. 38766.   Department One.   March 2, 1967.]

THE STATE OF WASHINGTON, *Respondent*, v. FRANK GARRISON ROFF et al., *Appellants*.*

*Reported in 424 P.2d 643.

*Frank Hayes Johnson,* for appellants (Appointed counsel for appeal).

*George A. Kain* and *Donald C. Brockett,* for respondent.

BARNETT, J.†—The defendants were jointly charged with two counts of grand larceny, namely, unlawful possession of two stolen cars. The defendants were found guilty as charged. They have appealed from their convictions.

The events taking place in the apprehension of the defendants and the investigation of the crimes charged are as follows: Prior to October 1, 1965, the Spokane police placed a garage at 4110 E. Sprague Avenue, Spokane, under surveillance after receiving reports of suspicious activities at that location. On the 1st of October, the police saw in the garage a car which was reported to have been stolen earlier in the day. At approximately 6:30 p.m. that day the police saw the defendants drive up to the garage, get out of the car and open the garage doors. At this time the officer on watch made a call for other policemen in the area to converge on the garage. As some officers went in the main entrance of the garage the defendants were seen climbing out a back window; they were apprehended in a lot behind the garage by other officers.

Two stolen cars were in the garage. These were the stolen cars which formed the basis for the information against the defendants. The police also seized in the garage a quantity of other items which might be termed tools of the trade for

---

†Judge Barnett is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

"professional" car thieves. These items as well as other items taken from the persons of the defendants were introduced into evidence at defendants' trial.

The police learned that a man known as George Schultz had rented the garage, and that he and the defendants had been staying at the Eastwood Motel near the city of Spokane. After the defendants were under arrest some police officers, without a warrant of any kind, went to the motel to arrest Schultz on probable cause to believe that he had aided and abetted the defendants in the unlawful possession of stolen property. The police officers knocked on the door of the motel room rented to Schultz and failed to get an answer, but on hearing a noise in the room they had the motel operator open the door. A search for Schultz was made of the motel unit, but Schultz was not found; however, in the process of the search for Schultz the police observed items which were introduced into evidence in this case. These items were not seized at this time.

The room rent had been paid either by one of the defendants or George Schultz for the night of September 30, 1965, and this rent was to continue until noon, October 1. No rent had been paid for any time thereafter on unit 40 of the Eastwood Motel. The motel operator told the police officers on the evening of October 1, that she would remove the belongings of the occupants of unit 40 after 12 p.m., October 2, 1965, if no one returned to the motel room or paid for it. The record does not indicate that any one of the occupants returned to the motel room or that anyone paid more rent for it. On October 2, the police arrived at the motel about 12:30 p.m., and helped the motel operator remove the property in the room belonging to the occupants. The items in controversy were seized at this time.

The defendants assign error to the admission of the evidence obtained at the garage because the arrest of the defendants and the search of the garage were invalid. Defendants do not argue that there was no probable cause to arrest without a warrant of arrest. Their contention is that the arrest is unlawful because the police failed to go before

a magistrate when they knew the identity of the defendants and that there was a stolen vehicle in the garage several hours before the arrest was made. This argument is answered in *Carlo v. United States,* 286 F.2d 841, 846 (2d Cir. 1961), *cert. denied,* 366 U. S. 944, 6 L. Ed. 2d 855, 81 Sup. Ct. 1672.

Delay by law enforcement officers in arresting a suspect does not ordinarily affect the legality of the arrest. . . . Law enforcement officers have a right to wait in the hope that they may strengthen their case by ferreting out further evidence or discovering and identifying confederates and collaborators.

We conclude that the arrest in the present case was valid and it follows that the search and seizure at the garage incident to this arrest was also valid. The motion to suppress the evidence obtained at the garage was properly denied.

The next assignment of error the defendants make is as follows: "2. The search and seizure of evidence at the motel after the arrest of the defendants and at a point distance from the arrest, was unlawful and such evidence should have been suppressed, as not incident to any lawful arrest."

We agree that the alleged search and seizure at the motel was not incidental to the arrest of these defendants at the garage. However, the record presents a sufficient basis for the affirmance of the trial court on the question of the validity of the seizure of the items of property at the motel.

In order to properly analyze and dispose of the assignment of error based on the alleged illegal search and seizure of the motel room it is necessary to emphasize that there were two separate and distinct entries into the motel room by the police. When the police officers initially went into the motel room, shortly after the arrest of the defendants on the night of October 1, their objective was to arrest a man known as George Schultz on probable cause that he had aided and abetted the defendants in the commission of a felony, and with reason to believe the suspect was in the motel room. Although it was argued to the trial judge that

there was no probable cause to arrest Schultz it is not urged on this appeal. Nevertheless, we have reviewed the record and we are convinced that there was probable cause to arrest Schultz for a felony without a warrant.

■ Since the police officers were properly in the motel room on the initial entry there was no illegal search or seizure at this time. The record discloses that the police searched the premises only in an effort to find Schultz and during the course of this search they saw the property which is objected to by the defendants as illegally seized. These items of property were not seized at this time, but were left in the motel room until police officers made a second entry into the room. The police officers were not searching the motel room as an incident to the arrest of the defendants; they were searching the premises for Schultz and could observe what was open and obvious to their eyes. *People v. Gilbert,* 63 Cal. 2d 690, 408 P.2d 365 (1965); *Tacoma v. Houston,* 27 Wn.2d 215, 177 P.2d 886 (1947). It has been said that police officers "Once in the apartment lawfully, . . . need not 'look the other way, or disregard the evidence [their] senses bring [them]', for 'mere observation' does not 'constitute a "search" '." *United States v. Scott,* 149 F. Supp. 837, 841 (D.C. Cir. 1957). Therefore, we find at this point in the chronology of the motel incident, that is, at the conclusion of the officers' initial entry into the motel room, there had been no unreasonable search or seizure. Furthermore, the police officers being in the motel room to arrest the suspect Schultz and seeing, but not removing, what was obvious, did not taint those items as "fruit of activities in violation of the fourth amendment."

The second question raised by the motel incident is the validity of the seizure by the officers of the items in question when they returned to the motel on October 2, 1965. We have ruled above that the knowledge of the property being in the motel room was not the fruit of unlawful activities of the police, therefore, the legality or illegality of this later seizure must be decided upon other circumstances.

On the facts in this case it is difficult to see validity in the objection to the second entry by the police officers into the motel room and seizure at this time of some of the items therein. The rent had not been paid for the 24-hour period prior to the entry by the police. The motel operator had told the officers that the tenancy would be terminated at noon on October 2, about a half hour before the police arrived at the motel on this second occasion. The officers had the permission of the motel operator to enter the room and seize the items in question.

On the question of the termination of the tenancy of a hotel room the California Supreme Court said in a case where the police had no search warrant:

> The record is sufficient to show that the hotel room in which the narcotics were found on September 15 was no longer defendant's room. He rented it on September 13, paying for one day only, and the receipt[1] given him described the duration of his tenancy as "from September 13 to September 14." The owner of the hotel testified that, had the opportunity arisen, the room would have been rented to another as of September 14. Defendant's tenancy could be found to have expired before the search was made, and the manager of the hotel was entitled to permit the police to enter and search the room. *People v. Van Eyk*, 56 Cal. 2d 471, 478, 364 P.2d 326 (1961), *cert. denied*, 369 U.S. 824, 7 L. Ed. 2d 788, 82 Sup. Ct. 838 (1962).

In a second California case when there was a failure to pay for continued rental of a hotel room, and the hotel management was in the process of removing the tenant's belongings when the police arrived, and they were given permission by the hotel manager to search the room, the court said:

> [T]here was sufficient evidence to support the conclusion that defendant's occupancy of the room ended at 12 noon; that therefore the manager, having complete control of the premises, had the right to remove the defendant's belongings and prepare the room for a future guest, and

---

[1] Although there was no receipt from the motel in evidence in the present case, the motel operator testified that the rent had been paid for September 30 and that it was to go only until noon on October 1.

hence the search was legal. *People v. Crayton*, 174 Cal. App. 2d 267, 269, 344 P. 2d 627 (1959).

In accordance with these cases, we hold that there was a rightful termination of the tenancy of the motel room, and the operator of the Eastwood Motel had the right to allow the police to enter into the room and seize the items involved in this case.

The United States Supreme Court has held that police officials could thoroughly search a hotel room without a search warrant when the room had been vacated and the hotel management gave the officers permission to do so. *Abel v. United States*, 362 U.S. 217, 4 L. Ed. 2d 668, 80 Sup. Ct. 683 (1960). Although no one had vacated the motel room in the present case, the tenancy had been terminated and we conclude that *Abel, supra,* does control the result in this case. Possession obtained by the police in the manner indicated by the instant facts is not to be condemned as an unreasonable search and seizure.

■ It is contended in assignment of error No. 3 that the trial court erred in allowing evidence of other crimes. Intent is an element of the crimes charged. Hence this argument is wholly without merit. The evidence in this case was of similar and related offenses with which the defendants had not been charged and convicted. However, the rule in this state is that when the elements of intent on the part of the accused is involved in the offense charged, evidence of other related offenses having a bearing upon the one charged is then properly received. *State v. Leohner*, 69 Wn.2d 131, 417 P.2d 368 (1966); *State v. Salle*, 34 Wn.2d 183, 208 P.2d 872 (1949).

In their fourth assignment of error the defendants contend that the court did not advise the jury of the limited purpose for which the evidence of other crimes was to be used. The answer to this assignment of error is that the trial court did instruct the jury as to the use of evidence of other crimes in a lengthy and complete instruction. *State v. Goebel*, 36 Wn.2d 367, 218 P.2d 300 (1950), cited by defend-

ants is not apposite because no cautionary instruction was given in that case.

██ Defendants' assignment of error No. 5 is based upon RCW 10.46.010 which provides that trial in a criminal case is to be had within 60 days after an information has been filed unless good cause to the contrary is shown. In the present case the information was filed on October 27, 1965. This was after the dates in October for the setting of jury cases for the month of November. Defendants' case was set on December 10, 1965, for a trial on January 17, 1966, and this trial date was more than 60 days after the information was filed. The defendants did not request a special setting for the November 1965 jury term and at the time the case was set defendants did not object to the January 17 trial date. It was not until 6 days before trial that defendants moved to dismiss for failure to have their trial within the statutory period. The circumstances of this case indicate that the ruling of the trial court was correct. *State v. Dickens,* 66 Wn.2d 58, 401 P.2d 321 (1965).

██ Error is assigned to the giving of instructions 12, 13, and 18 for various reasons, but it is admitted in defendants' brief on appeal that no exceptions were taken to any of these instructions at the trial. Instructions not excepted to at trial become the law of the case, and no error may be assigned to them on appeal. *State v. Leohner, supra; Crippen v. Pulliam,* 61 Wn.2d 725, 380 P.2d 475 (1963).

We have examined other assignments of error urged by defendants and find them without merit.

The judgment is affirmed.

HILL, ROSELLINI, OTT, and HALE, JJ., concur.