[No. 3715–II.  Division Two.  April 4, 1980.]

THE STATE OF WASHINGTON, *Respondent*, v. LESLEY
R. HENDRICKS, *Appellant*.

*Joseph A. Breidenbach,* for appellant.

*Curtis Janhunen, Prosecuting Attorney,* and *John C. Strzynski, Deputy,* for respondent.

PEARSON, J.—Defendant Lesley R. Hendricks appeals from his conviction of burglary in the second degree. RCW 9A.52.030. In this appeal the question is the validity of his arrest. Three issues are raised: (1) Did the police have probable cause to make the arrest? (2) Was it constitutionally permissible for the police to make a warrantless entry into plaintiff's residence in order to make the arrest? (3) Did the police fail to comply with the State's knock and announce statute, RCW 10.31.040? We affirm the conviction.

The incident leading to defendant's arrest commenced at approximately 3:15 a.m. on June 26, 1978, when Aberdeen police were called to the Jackpot Service Station to investigate a burglary which had just taken place. The proprietor, Adelbert Jordan, told officers he had seen a white male with shoulder length, stringy dark brown or black hair, approximately 5 feet 8 inches tall, with a medium build, and wearing an off–white, short–sleeved shirt and corduroy pants. Jordan told Officer Larry McCluskey that the man fled south along Northwest Boulevard. The officer's inspection of the premises revealed that the burglar had gained entrance to the building by prying out the glass from a small window after removing the surrounding putty.

Several things led Officer McCluskey to conclude that defendant was probably the burglar:

1. From investigation of another burglary for which defendant had been convicted, Officer McCluskey had learned that removing the putty from windows was defendant's method of operation.

2. He knew that defendant was currently subject to a burglary prosecution.

3. He knew that defendant lived about 200 feet south of the Jackpot Service Station, which corresponded with the direction of the burglar's flight.

4. The description given by Jordan matched defendant's description.

5. Defendant was in the area, as Officer McCluskey had driven by defendant's motel apartment earlier in the night and observed lights on inside. McCluskey had contacted defendant at this same motel room 1 week earlier concerning a theft.

McCluskey proceeded immediately to the motel room. When he arrived at the motel room door, McCluskey was surprised to see a padlock on the door moving slowly back and forth, which kept moving for some time. But when he knocked and said, "Mr. Hendricks, open the door, the police. We need to talk to you," the padlock stopped moving and McCluskey heard footsteps moving away from the door. He then stepped to a window. He could not see defendant, but could see numerous shells and boxes of ammunition on a table inside, as well as a green Army jacket similar to one he had previously seen worn by defendant.

McCluskey again went to the door and knocked, announcing he was a policeman and wanted to talk to defendant. There was no response. Backup units were then dispatched, since it appeared that defendant would be armed and since he had previously threatened to kill McCluskey.

The officer tried knocking again. When there was no answer, other officers removed the hinges from defendant's

back door. At this point, defendant said, "You're not to come in here." When McCluskey repeated his request for entry, defendant said, "No." The door was then removed and defendant was arrested. He was wearing a light T-shirt and corduroy pants. His shirt was smeared with grease similar to that observed on the window sill of the service station where entry had been made.

A search of defendant's person made incident to the arrest uncovered items reported by Mr. Jordan to be stolen. Subsequent to his arrest, and after *Miranda* warnings were given, defendant acknowledged his guilt on two separate occasions.

■ We turn first to the question of whether Officer McCluskey had probable cause to arrest defendant. The general rule is that a police officer has probable cause to make a warrantless arrest when the facts and circumstances, considered in light of the officer's special expertise and training in identifying criminal behavior, warrant a reasonable belief that the suspect committed the offense in question. *State v. Scott,* 93 Wn.2d 7, 604 P.2d 943 (1980); *State v. Ward,* 24 Wn. App. 761, 603 P.2d 857 (1979). *See also Gerstein v. Pugh,* 420 U.S. 103, 43 L. Ed. 2d 54, 95 S. Ct. 854 (1975). The officer need not have knowledge of evidence sufficient to establish the guilt of the suspect beyond a reasonable doubt. *Draper v. United States,* 358 U.S. 307, 3 L. Ed. 2d 327, 79 S. Ct. 329 (1959); *State v. Scott, supra; State v. Ward, supra.*

The five factors enumerated above amply support the reasonableness of Officer McCluskey's belief that defendant had committed the burglary in question. We conclude that Officer McCluskey had probable cause to arrest defendant.

We turn next to the question of whether a warrantless entry could be made into defendant's residence for the purpose of making the arrest, absent exigent circumstances. Defendant contends such entry is a violation of the fourth amendment to the United States Constitution and of article 1, section 7 of the Washington State Constitution.

Previously the appellate courts of this state have countenanced without Fourth Amendment considerations the warrantless entry into a defendant's private residence for the purpose of making a felony arrest, where probable cause was established but where no exigent circumstances existed. *State v. Roff*, 70 Wn.2d 606, 424 P.2d 643 (1967); *State v. Hackett*, 4 Wn. App. 360, 481 P.2d 466 (1971).

In 1976, however, the United States Supreme Court inferentially suggested that Fourth Amendment considerations are involved in such warrantless entries. In *United States v. Watson*, 423 U.S. 411, 46 L. Ed. 2d 598, 96 S. Ct. 820 (1976), the court upheld, against a Fourth Amendment challenge, the warrantless arrest of a suspect in a *public* place upon probable cause, even though there was an adequate opportunity for police to obtain a warrant. However, two of the concurring opinions in *Watson,* by Justice Powell and Justice Stewart, express the view that

> [W]e do not today consider or decide whether or under what circumstances an officer lawfully may make a warrantless arrest in a private home or other place where the person has a reasonable expectation of privacy.

(Footnote omitted.) 423 U.S. at 432–33. Later in the same year, the Supreme Court decided *United States v. Santana*, 427 U.S. 38, 49 L. Ed. 2d 300, 96 S. Ct. 2406 (1976). In *Santana,* the officers, with probable cause to arrest defendant, observed her standing in the doorway of her residence. As they approached, she retreated into the vestibule of her house, where the arrest was effected. In upholding the arrest, the Supreme Court concluded that the arrest could not be successfully challenged by the expedient of escaping to a private place, where it "has been set in motion in a public place, and is therefore proper under Watson."

The rationale for allowing entry of Santana's private residence was that the police were in "hot pursuit" of the defendant, who, being aware of their presence, would likely destroy evidence in her possession. The "hot pursuit" doctrine was recognized as a *right* of the police in *Warden v.*

*Hayden,* 387 U.S. 294, 18 L. Ed. 2d 782, 87 S. Ct. 1642 (1967). There the police had probable cause to believe that an armed robber had entered a house a few minutes before. In *Warden,* the court permitted a warrantless entry to allow an arrest of the robber and to search for weapons.

We believe the "hot pursuit" doctrine should be applied in this case. In *Santana,* the court indicated that while "'hot pursuit' means some sort of a chase . . . it need not be an extended hue and cry 'in and about [the] public streets.'" *United States v. Santana,* 427 U.S. at 43.

The "pursuit" here occurred within a few minutes of the officer's inspection of the burglarized premises and discussion with its owner. From that moment, the officer had probable cause to arrest defendant and proceeded immediately to do so. He was aware that defendant was a transient living in a motel who could depart at any time. He was aware upon his arrival at the premises that defendant was inside, and in all probability in possession of the contraband taken in the robbery. Had the officer delayed for the time it might take to obtain a warrant, given that it was approximately 4 a.m., the defendant and the contraband could well have been gone. The "hot pursuit" doctrine is a recognition of police necessities under this type of circumstance. We confirm its application to these facts, and uphold the warrantless entry and arrest.

The final issue raised is whether the police failed to comply with this state's knock and announce statute, RCW 10.31.040, which provides:

> To make an arrest in criminal actions, the officer may break open any outer or inner door, or windows of a dwelling house or other building, or any other inclosure, if, after notice of his office and purpose, he be refused admittance.

██ Defendant asserts that the statute was violated because the officers, after knocking and identifying themselves, said they wanted to "talk" to him, instead of saying

they wanted to arrest him. We disagree. Whatever the purpose of the police, either to arrest or execute a search warrant, the purpose of the rule is to insure that an individual's right of privacy within his home will not be violated as well as to protect the officer. *State v. Lowrie,* 12 Wn. App. 155, 157, 528 P.2d 1010 (1974):

> An individual should be given an opportunity to be apprised of an officer's authority, of his purpose, and be permitted a reasonable opportunity to voluntarily admit the officer into his home. An equally important purpose for the rule is to protect the officer himself.

In fulfilling the purposes behind the statute, it seems irrelevant whether the officer says, "We want to talk to you," or "We want to talk to you and possibly arrest you." The latter statement has more potential for creating violence than the former statement, particularly where, as here, there is some evidence that the person inside the dwelling is armed.

Judgment affirmed.

REED, C.J., and ARMSTRONG, J. Pro Tem., concur.

Reconsideration denied June 18, 1980.

Review denied by Supreme Court August 15, 1980.