[No. 10388-9-III. Division Three. April 25, 1991.]

THE STATE OF WASHINGTON, *Respondent,* v. TIFFANY GRIFFITH, *Petitioner.*

---

*Kenneth L. Knox* of *Spokane Public Defender's Office* for petitioner.

*Andrew K. Miller, Prosecuting Attorney,* and *Kevin L. Holt* and *Paige L. Sully, Deputies,* for respondent.

THOMPSON, J.—Tiffany Griffith was convicted of driving while intoxicated by the Benton County District Court. On appeal to the Superior Court, her conviction was affirmed. She petitioned for discretionary review, claiming the trial court erred by refusing to suppress evidence of intoxication. We granted review and affirm.

## FACTS

A Benton County sheriff's deputy testified that on October 31, 1988, shortly after 11 p.m., he observed a vehicle cross over the center line of a Kennewick street, then weave back and forth several times in its own lane. The deputy activated his emergency lights and attempted to stop the car. The vehicle struck a street maintenance sign placed over a manhole cover, but continued without stopping until it eventually turned into the driveway of a residence.

The deputy testified he pulled in behind the vehicle. When the driver jumped out of the car and started running toward the residence, he got out and called for her to stop. She did not stop, but proceeded to the front door, opened it, and stepped inside. The deputy came up behind her and she tried to shut the door before he arrived. The deputy leaned against it to prevent it from closing. He smelled

alcohol on her breath and asked for her driver's license. When she was unable to find it in her purse, the deputy asked if they could check her vehicle for it. She and the deputy then proceeded to her vehicle.

Ms. Griffith was unable to locate her driver's license. The deputy then conducted field sobriety tests outside of the residence. He observed that Ms. Griffith had watery, bloodshot eyes, her voice was slurred, and there was a strong odor of intoxicants. He placed her under arrest and transported her to the Benton County Justice Center. There she was read her constitutional rights and implied consent warnings. A Breathalyzer test was taken and she was charged with driving while under the influence of intoxicants (DWI).

A suppression hearing was held January 3, 1989. Ms. Griffith argued all evidence gathered after the deputy prevented her from closing the door should be suppressed because it was "fruit of the poisonous tree" or the result of an unlawful arrest. The District Court found that when the deputy went to the residence, he had probable cause to believe negligent driving had occurred, and reason to suspect DWI, a serious offense. Since the suspect was fleeing, the warrantless arrest was constitutional and the evidence of intoxication admissible. She was subsequently found guilty.

On appeal to the Benton County Superior Court, Ms. Griffith's conviction in district court was affirmed. As to the District Court's refusal to suppress evidence, the Superior Court agreed DWI was a serious offense, found a need to arrest to prevent the destruction of evidence of blood alcohol level, and determined the deputy needed to ascertain the identity of the person exiting the vehicle. We have serious doubts under these facts that an arrest occurred when Ms. Griffith was first contacted in her doorway. However, we will analyze the case as submitted.

We first address the issue whether the deputy had probable cause to believe she was driving while intoxicated or driving recklessly.

Ms. Griffith contends the deputy did not have probable cause because he did not lawfully obtain evidence of intoxication until after he unlawfully entered her home. The State contends the deputy had probable cause to believe a serious offense had been committed.

## PROBABLE CAUSE TO ARREST

Probable cause to arrest exists when "the totality of the facts and circumstances *known to the officers at the time of the arrest* would warrant a reasonably cautious person to believe an offense is being committed". *Watkins v. Department of Licensing,* 33 Wn. App. 853, 856, 658 P.2d 53 (1983) and cases cited therein. *See generally* Utter, *Survey of Washington Search and Seizure Law: 1988 Update,* 11 U. Puget Sound L. Rev. 411, 453 (1988). The officer does not have to have knowledge of evidence sufficient to support a guilty verdict. *State v. Hendricks,* 25 Wn. App. 775, 778, 610 P.2d 940, *review denied,* 94 Wn.2d 1006 (1980). There must be probable cause to believe that the person to be arrested committed the offense. *See, e.g., State v. Gluck,* 83 Wn.2d 424, 426–27, 518 P.2d 703 (1974).

The deputy advised Ms. Griffith she was under arrest after he gave her several field sobriety tests. By this time, he had observed her slurred voice and watery, bloodshot eyes, and had smelled intoxicants. He had assessed her performance on field sobriety tests. Collectively, such evidence constituted probable cause to make a DWI arrest.[1]

Ms. Griffith contends her arrest occurred when the deputy prevented her from closing her front door. At that time, she argues, there was no probable cause to arrest her for driving while intoxicated.

---

[1]For example, in *Watkins,* the driver was observed going through a red light. The court held this was a sufficiently serious offense to cause the officers to pursue the vehicle. When the officers stopped the vehicle and noted the odor of alcohol, unsteadiness, slurred speech and watery eyes of the driver, they had reasonable grounds to believe the erratic driving was caused by alcohol and probable grounds to arrest the driver.

40

■ For constitutional purposes, an arrest occurs when, by a show of authority, a suspect's freedom of movement is restrained. *State v. Holeman,* 103 Wn.2d 426, 428, 693 P.2d 89 (1985) (citing *United States v. Mendenhall,* 446 U.S. 544, 64 L. Ed. 2d 497, 100 S. Ct. 1870, *reh'g denied,* 448 U.S. 908, 65 L. Ed. 2d 1138, 100 S. Ct. 3051 (1980)). When the deputy arrived at the front door, he had observed Ms. Griffith's erratic driving. Neither flashing lights nor the deputy's shouts had persuaded Ms. Griffith to stop. Under these facts, the deputy had probable cause to continue his pursuit, either for purposes of issuing a ticket for negligent driving or, after further investigation, arresting her for DWI.

Since Ms. Griffith was attempting to close her front door and the deputy prevented it, we need to address the issue raised regarding Fourth Amendment constitutional protections and the warrantless arrest.

## WARRANTLESS HOME ARRESTS

■ The officer remained outside Ms. Griffith's house at all times. However, the location of the arresting officer at the time of an arrest has been held unimportant in determining whether an arrest occurred in the home. *Holeman,* at 429 (citing *United States v. Morgan,* 743 F.2d 1158 (6th Cir. 1984); *United States v. Johnson,* 626 F.2d 753 (9th Cir. 1980), *aff'd,* 457 U.S. 537, 73 L. Ed. 2d 202, 102 S. Ct. 2579 (1982)). The location of the suspect is determinative and a suspect is considered to be in her home for purposes of the Fourth Amendment, even if standing in her doorway.[2]

Article 1, section 7 of the Washington State Constitution affords greater protection to privacy interests than the Fourth Amendment. *State v. Ramirez,* 49 Wn. App. 814,

---

[2]The front porch of a home is considered a public place for arrest purposes. *State v. Bockman,* 37 Wn. App. 474, 481, 682 P.2d 925, *review denied,* 102 Wn.2d 1002 (1984) (citing *United States v. Santana,* 427 U.S. 38, 49 L. Ed. 2d 300, 96 S. Ct. 2406 (1976)). However, the Fourth Amendment "draw[s] a firm line at the entrance to the house [and] that threshold may not reasonably be crossed" absent exigent circumstances. *Payton v. New York,* 445 U.S. 573, 590, 63 L. Ed. 2d 639, 100 S. Ct. 1371 (1980); *Holeman,* at 429.

746 P.2d 344 (1987) (citing *State v. Bell*, 108 Wn.2d 193, 196, 737 P.2d 254 (1987)). *Ramirez*, at 818, held:

[I]n the absence of consent or exigent circumstances, both provisions prohibit the warrantless entry into an individual's home in order to make a felony arrest even though probable cause exists to arrest the individual therein.

*See also Holeman*, at 429 (citing *Payton v. New York*, 445 U.S. 573, 590, 63 L. Ed. 2d 639, 100 S. Ct. 1371 (1980)). The rationale for drawing a line at the threshold is apparent when the suspect is in the home and comes to the doorway in response to a police officer's knock. The rationale diminishes considerably when the suspect is fleeing to the home to avoid arrest. Since Ms. Griffith was inside her home. at one point in the scenario, the question of consent[3] or the presence of exigent circumstances arises.[4]

■ Six exigencies justifying a warrantless home arrest were recently summarized:

(1) a grave offense, particularly a crime of violence, is involved; (2) the suspect is reasonably believed to be armed; (3) there is reasonably trustworthy information that the suspect is guilty; (4) there is strong reason to believe that the suspect is on the premises; (5) the suspect is likely to escape if not swiftly apprehended; and (6) the entry is made peaceably.

*State v. Hoffman*, 116 Wn.2d 51, 101, 804 P.2d 577 (1991). In *Seattle v. Altschuler*, 53 Wn. App. 317, 320, 766 P.2d 518 (1989), the court noted five additional exigencies previously acknowledged in *State v. Terrovona*, 105 Wn.2d 632, 716 P.2d 295 (1986):

(7) hot pursuit; (8) fleeing suspect; (9) danger to arresting officer or to the public; (10) mobility of the vehicle; and (11) mobility or destruction of the evidence.

---

[3]The State has not argued that consent justified Ms. Griffith's arrest, although the act of going to her car to look for her license and everything that followed could be considered "consensual".

[4]RCW 10.31.100(3) grants any police officer authority to make a warrantless arrest if there is probable cause to believe the person is driving while intoxicated (RCW 46.61.502), is driving negligently (RCW 46.61.525), or is driving recklessly (RCW 46.61.500). However, the statute likely contemplates an arrest in a public place and is inapplicable given the facts presented here.

*See also State v. Flowers,* 57 Wn. App. 636, 789 P.2d 333, *review denied,* 115 Wn.2d 1009 (1990); *State v. Machado,* 54 Wn. App. 771, 776, 775 P.2d 997 (1989) (a 12th factor is whether the arrest results from an ongoing investigation in the field), *review denied,* 114 Wn.2d 1009 (1990).

In the case at bar, the State argues Ms. Griffith's arrest is justified because there was a hot pursuit, she was a fleeing suspect, there was a need to preserve evidence, and the underlying offense was serious.

■ A. Hot Pursuit. The meaning of hot pursuit as set forth in *United States v. Santana,* 427 U.S. 38, 49 L. Ed. 2d 300, 96 S. Ct. 2406 (1976) was acknowledged in *State v. Counts,* 99 Wn.2d 54, 60, 659 P.2d 1087 (1983). It is *"some sort of a chase,"* but not necessarily "an extended hue and cry 'in and about [the] public streets.'" *Counts,* at 60 (quoting *Santana,* 427 U.S. at 43). The fact that a pursuit ends almost as soon as it begins is immaterial. *Santana,* 427 U.S. at 43. An arrest "set in motion in a public place" is not defeated by the "expedient of escaping to a private place." *Santana,* 427 U.S. at 43. *See also State v. Bockman,* 37 Wn. App. 474, 481, 682 P.2d 925, *review denied,* 102 Wn.2d 1002 (1984).

In the instant case, the deputy testified he put on his emergency lights and followed Ms. Griffith for approximately two blocks when she drove her vehicle into the driveway of a residence. His pursuit was thus set in motion in a public place. He never lost sight of Ms. Griffith. He called to her as she ran into the residence. Such action was hot pursuit as distinguished from *Santana,* in which case the suspect had been standing in her doorway before retreating into the house. It would be unreasonable to allow a suspect to flee to a private place and raise a "sanctuary defense" to thwart an ongoing investigative effort.

The doctrine of hot pursuit was held sufficient to uphold a warrantless entry and home arrest in *State v. Hendricks, supra.* Police were investigating a burglary and an officer immediately suspected the defendant. It was almost 4 a.m. and the pursuit occurred within minutes of the officer's

inspection of the burglarized premises. The officer went to the motel where the transient defendant lived and removed the back door from its hinges. The officer knew the defendant was inside and probably had contraband from the burglary. *Hendricks* noted the hot pursuit doctrine was a recognition of police necessities under the type of circumstances presented.

A decision contrary to *Hendricks* was reached in *Altschuler.* The defendant was observed by two police officers driving a vehicle through a red light. The officers pursued the vehicle with emergency lights flashing. They caught up with it approximately one block past the red light, but were unsuccessful in getting the defendant to stop. The defendant drove 12 blocks to his home. He reached his driveway, opened his garage door by remote control, drove in and parked. He used his remote control to close the door, but one of the officers ran into the garage before it closed. There was nothing on the record to indicate what happened in the garage. The defendant was arrested and charged with resisting arrest, refusal to stop, and running a red light.

The City of Seattle argued the warrantless arrest of Altschuler was justified because there was a hot pursuit, a fleeing suspect, and the suspect was mobile. *Altschuler* found hot pursuit, but no other exigencies. It held the warrantless arrest of Altschuler within his home for minor traffic infractions was unlawful based solely on a hot pursuit.[5]

We are not persuaded *Altschuler* should be followed under the facts in this case. First, the deputy did not enter Ms. Griffith's home. Second, the deputy observed more than a minor traffic infraction. Third, we find other exigencies were present.[6]

---

[5]In dicta, *Altschuler* stated even if the defendant were also fleeing, that fact alone or in combination with "hot pursuit" would not justify the warrantless arrest.

[6]*Altschuler,* at 321, stated that based on *Welsh v. Wisconsin,* 466 U.S. 740, 751–53, 80 L. Ed. 2d 732, 104 S. Ct. 2091 (1984), the gravity of the underlying

44

B. <u>Fleeing Suspect</u>. The trial court in the case at bar found that Ms. Griffith became a "fleeing suspect" once she left her vehicle and ran to the house. We agree, and in fact if Ms. Griffith was aware of the police car pursuing her, she became a fleeing suspect even before she exited her vehicle.

■ The deputy began pursuing Ms. Griffith after he witnessed her weaving vehicle. Thereafter, he never lost sight of her. He was unsuccessful in getting her to stop. When she exited her vehicle, he did not use physical force to restrain her. He did not invade the sanctity of her home. His intrusion was limited to that necessary to prevent her escape and to continue his investigation. To require a warrant before proceeding under these circumstances would be unreasonable. The single deputy would have been unable to observe all entrances and exits to the home and the suspect would have had ample opportunity to escape.

■ C. <u>Destruction of Evidence</u>. In *Welsh v. Wisconsin,* 466 U.S. 740, 80 L. Ed. 2d 732, 104 S. Ct. 2091 (1984), Wisconsin argued the need to obtain evidence of blood alcohol levels was an exigency justifying a warrantless home arrest. *Welsh* held such exigency was insufficient by itself to justify a warrantless home arrest.[7] We find the destruction of evidence, though not alone controlling, was an exigency in the instant case.

D. <u>Gravity of Underlying Offense</u>. Ms. Griffith argues the underlying offense she was charged with was not sufficiently grave to justify her warrantless home arrest. She cites as authority *Welsh, Ramirez,* and *Altschuler.*

---

offense is a key factor in determining whether an exigency exists. Although a court should consider the gravity of the underlying offense, especially if other exigencies are limited, we do not conclude that *Welsh* imposes an absolute ban on warrantless home arrests for "minor offenses".

[7]Unlike the case at bar, there were no other exigencies asserted in *Welsh.* In *Welsh,* the Supreme Court noted Wisconsin had classified the underlying offense (DWI) as a noncriminal, civil forfeiture offense without possible imprisonment. Under such circumstances, the home arrest could not be upheld "simply because evidence of the petitioner's blood–alcohol level might have dissipated while the police obtained a warrant." *Welsh,* 466 U.S. at 741.

The gravity of the underlying offense is an exigency considered in determining whether to uphold a warrantless home arrest. *E.g., Hoffman; Terrovona.* However, since we have determined Ms. Griffith's warrantless arrest was lawful as noted above, we do not find it necessary to decide whether the underlying offense at issue is sufficiently "grave" by itself to find Ms. Griffith's arrest lawful.

The contact with Ms. Griffith in her doorway, which ultimately led to her arrest, was lawful and the motion to suppress was properly denied. We affirm.

GREEN, C.J., and MUNSON, J., concur.