[No. 32485-7-II.   Division Two.   May 31, 2006.]

THE STATE OF WASHINGTON, *Respondent*, v. JEFFREY GLENN WOLTERS, *Petitioner*.

*James K. Morgan*, for petitioner.

*Susan I. Baur, Prosecuting Attorney*, and *Dustin D. Richardson, Deputy*, for respondent.

¶1 Armstrong, J. — Jeffrey Glenn Wolters moved to suppress certain evidence obtained after police arrested him without a warrant. The Cowlitz County District Court denied his suppression motion and the Cowlitz County Superior Court affirmed. Because the record supports a finding that exigent circumstances justified the arrest, we too affirm.

## FACTS

¶2 At an evidentiary hearing, Trooper Kevin Kingsley testified that while traveling westbound on Ocean Beach Highway, he observed Wolters's white Chevrolet pickup

about a block ahead of him. The pickup, which was in the right westbound lane, drifted partly into the left lane, abruptly overcorrected, and moved back into the right lane, nearly striking the curb. Wolters drove 5 to 10 miles per hour below the posted speed limit and continued to drift back and forth in his lane. Kingsley activated his emergency lights and siren, but Wolters failed to stop and continued driving erratically until he pulled into his own driveway and stopped.

¶3 Kingsley testified that Wolters exited his truck and walked toward the front of the truck with his hands in his pockets, a movement Kingsley considered furtive. Kingsley told him to "get his hands out of his pockets and stay where he was," but Wolters did not respond. Clerk's Papers (CP) (Dec. 20, 2004) at 52. Wolters then quickly ascended a small flight of stairs to the back door of his house and went through the exterior door and into what Kingsley believed to be a laundry room. The laundry room was an enclosed room with a door inside that led to the rest of the house. Through the exterior door, Kingsley saw Wolters attempting to enter the main part of the house. Kingsley continued to give verbal commands, with his gun pointed at Wolters, and eventually talked Wolters out onto the deck and took him into custody.

¶4 On cross-examination, Kingsley admitted that sometimes a vehicle could be weaving on the road for reasons unrelated to alcohol. He also admitted that he never mentioned in his narrative report that safety concerns were a basis for pulling his weapon. Kingsley said that he drew his gun once Wolters entered the exterior door because he was not sure what Wolters had inside the house. While Wolters tried to unlock the interior door, Kingsley could see that he did not have a weapon in his hands. As Wolters attempted to unlock the interior door, Kingsley continued to give verbal commands to Wolters to get him to cooperate and come outside. Although Kingsley could not remember whether he actually had to "lay hands" on Wolters to remove him from the house, he physically entered the laundry room and

"moved [Wolters] . . . out" to the deck to effect the arrest. CP (Dec. 20, 2004) at 65; CP (Jan. 31, 2005) at 21. Kingsley cited Wolters for driving under the influence, resisting arrest, and failure to yield to a police vehicle.

¶5 Wolters moved to suppress all evidence obtained after the arrest, arguing that the arrest was unlawful because Kingsley failed to obtain a warrant before arresting him. The State contends that exigent circumstances justified the arrest.

## ANALYSIS

¶6 All warrantless entries of a home are presumptively unreasonable. *Welsh v. Wisconsin*, 466 U.S. 740, 749, 104 S. Ct. 2091, 80 L. Ed. 2d 732 (1984) (citing *Payton v. New York*, 445 U.S. 573, 586, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980)). Absent exigent circumstances, both the Fourth Amendment and article I, section 7 of the Washington State Constitution prohibit the warrantless entry into an individual's home in order to make an arrest. *State v. Ramirez*, 49 Wn. App. 814, 818, 746 P.2d 344 (1987) (citing *Payton*, 445 U.S. at 587-88).

### I. Exigent Circumstances Justifying a Warrantless Arrest

¶7 The government bears the burden of showing the exigent circumstances that enable government agents to invade the sanctity of the home without a warrant. *Welsh*, 466 U.S. at 750. We consider 11 factors in determining whether exigent circumstances support a warrantless police entry into a home: Whether (1) a violent or other grave offense is involved, (2) the police have reason to believe the suspect is armed, (3) the police have reasonably trustworthy information that the suspect is guilty, (4) the police have strong reasons to believe the suspect is on the premises, (5) the suspect is likely to escape if not swiftly apprehended, (6) the police enter peaceably, (7) the police are in hot pursuit, (8) the suspect is fleeing, (9) the arresting officer or the public is in danger, (10) the suspect

has access to a vehicle, and (11) there is a risk that the police will lose evidence. *State v. Terrovona*, 105 Wn.2d 632, 644, 716 P.2d 295 (1986) (citing *Dorman v. United States*, 435 F.2d 385, 392-93 (1970) and *State v. Counts*, 99 Wn.2d 54, 60, 659 P.2d 1087 (1983)).

¶8 Wolters concedes that Kingsley (1) had reasonably trustworthy information that Wolters had committed several offenses,[1] (2) had strong reason to believe that Wolters was on the premises, and (3) was in hot pursuit[2] of (4) a fleeing suspect. Wolters contends, however, that these are insufficient to support the arrest. The State has the burden of showing that exigent circumstances compelled Kingsley to arrest Wolters without first obtaining a warrant. *State v. Cardenas*, 146 Wn.2d 400, 405, 47 P.3d 127 (2002) (citing *State v. Leach*, 113 Wn.2d 735, 738, 782 P.2d 1035 (1989)).

A. *Suspect Reasonably Believed Armed*

¶9 The State argues that Kingsley had reason to believe Wolters was armed when he exited his vehicle with his hands in his pockets and refused to take them out. Wolters argues that any such fear became unreasonable once Kingsley could see that Wolters was unarmed in the laundry room.

¶10 The district court expressly found that Wolters's "failure to remove [his] hands from [his] pockets heightened concerns that the defendant may be armed and dangerous." CP (Jan. 13, 2005) at 21. Wolters does not challenge this finding on appeal. Unchallenged findings of fact entered following a suppression hearing are verities on appeal. *State v. Gaines*, 154 Wn.2d 711, 716, 116 P.3d 993 (2005) (citing *State v. O'Neill*, 148 Wn.2d 564, 571, 62 P.3d 489 (2003)). Thus, we are bound by the finding that Kingsley

---

[1] Reasonably trustworthy information that a suspect has committed an offense does not, without more, satisfy the exigent circumstances requirement. *City of Seattle v. Altschuler*, 53 Wn. App. 317, 321, 766 P.2d 518 (1989).

[2] Hot pursuit alone is insufficient to justify entering the home without a warrant. *See Altschuler*, 53 Wn. App. at 321 (citing *Welsh*, 466 U.S. at 750, 753).

had heightened concerns that Wolters may have been armed.

## B. *Suspect Likely To Escape if Not Swiftly Apprehended*

¶11 The State argues that because the house had two exterior doors, one in front and one in back, and because Kingsley was the only law enforcement on scene, nothing would have kept Wolters from escaping through another door or window. Wolters argues that Kingsley could have maintained surveillance until a magistrate issued a warrant. Wolters also asserts that the State presented no evidence that Kingsley was legitimately concerned that Wolters might escape.

¶12 "The idea underlying the exigent circumstances exception to the requirement of a search warrant is that police do not have adequate time to get a warrant." *State v. Bessette*, 105 Wn. App. 793, 798, 21 P.3d 318 (2001). We measure exigency, in part, by considering whether it was feasible for the police to guard the premises while seeking a warrant. *State v. Welker*, 37 Wn. App. 628, 633, 683 P.2d 1110 (1984). The State must show reasons why it was impractical, or unsafe, to take the time to get a warrant. *Bessette*, 105 Wn. App. at 798.

¶13 Kingsley was the only officer at the scene. Kingsley was also worried that Wolters may have been armed. Moreover, Kingsley thought that Wolters may have been attempting to get a weapon from inside his house. Kingsley's testimony implies that he believed that it would have been unsafe or impractical to obtain a warrant.

¶14 Nonetheless, nothing in the record shows that Wolters was likely to escape if not swiftly apprehended. In *State v. Griffith*, 61 Wn. App. 35, 44, 808 P.2d 1171 (1991), the court noted that a suspect would have ample opportunity to escape where there is only one law enforcement officer because he would be unable to observe all entrances and exits to the home. But the test is whether the suspect is *likely* to escape, not whether the suspect has an opportunity to escape. *Terrovona*, 105 Wn.2d at 644

(citing *Dorman*, 435 F.2d at 392-93). Here, Kingsley testified that Wolters's movements were sloppy, he was swaying back and forth, and he had trouble even inserting the key in the lock. Although Wolters ignored Kingsley's repeated requests to cooperate, the State has not established that he was likely to escape if not immediately apprehended.

## C. *Peaceable Entry*

¶15 The State argues that "[u]p to the point at which the trooper had to draw his gun to affect arrest," the trooper did not exhibit aggressive or hostile conduct. Br. of Resp't at 10. Wolters contends that Kingsley did not make a peaceable entry since he entered the home with his gun drawn and pointed at Wolters.

¶16 In *Dorman*, the case from which the *Terrovona* court adopted the first six exigent circumstance factors, the court explained why peaceable entry was a proper consideration: "[T]he fact that entry was not forcible aids in showing reasonableness of police attitude and conduct. The police, by identifying their mission, give the person an opportunity to surrender . . . without a struggle and . . . avoid the invasion of privacy involved in entry into the home." *Dorman*, 435 F.2d at 393. *Dorman* cited *Miller v. United States*, 357 U.S. 301, 307, 78 S. Ct. 1190, 2 L. Ed. 2d 1332 (1958), and *Accarino v. United States*, 179 F.2d 456 (D.C. Cir. 1949),[3] both of which defined "peaceable entry" as entering without using physical force.

¶17 Kingsley followed Wolters with his emergency equipment activated for a significant time before the two arrived at Wolters's home. Thereafter, he repeatedly commanded Wolters to comply with his orders, including that Wolters exit the laundry room. This conduct sufficiently apprised Wolters of Kingsley's mission. *See Dorman*, 435 F.2d at 393. Although Kingsley had his gun pointed at

---

[3] Both cases talk extensively about forcible entry and provide significant commentary denouncing the practice of causing physical damage to a suspect's home in an attempt to effect an arrest.

Wolters when he entered the house, he did so because he feared that Wolters may have been armed; he did not tell Wolters that he would shoot if Wolters did not exit the room. Further, there is no evidence that Kingsley damaged any of Wolters's property when he entered the laundry room. We conclude that under the circumstances, Kingsley peaceably entered Wolters's home to effect the arrest.

## D. *Destruction of Evidence*

¶18 The State argues that the possibility of blood or breath-alcohol levels decreasing in the time it might take to get a warrant was an exigent circumstance justifying the warrantless arrest.

¶19 In *Griffith*, the defendant's erratic driving led a police officer to suspect that she was driving under the influence. *Griffith*, 61 Wn. App. at 37. The officer activated his car's emergency equipment and followed the defendant, who refused to stop, to her residence. *Griffith*, 61 Wn. App. at 37. Without first obtaining a warrant, the officer arrested the defendant after convincing her to try to find her driver's license in her car. *Griffith*, 61 Wn. App. at 38. The court found that, although not dispositive, the fact that the defendant's blood-alcohol level might have dissipated while the police obtained a warrant was an exigency justifying the warrantless arrest. *Griffith*, 61 Wn. App. at 44.

¶20 Kingsley testified that Wolters's driving was consistent with that of a driver under the influence of intoxicants. Further, Wolters continued to drive erratically and failed to stop after Kingsley activated his emergency equipment. Kingsley had probable cause to arrest Wolters for driving under the influence (DUI). Thus, there was a possibility that evidence of the crime (Wolters's blood-alcohol level) would have been destroyed without an immediate arrest. *See Griffith*, 61 Wn. App. at 44.

## E. *Grave Offense*

¶21 In *Griffith*, the only post-*Terrovona* Washington case where the home arrest was based on an underlying DUI,

the court declined to address whether DUI is sufficiently "grave" by itself to justify a home arrest. *Griffith*, 61 Wn. App. at 45. Because we hold that several other *Terrovona* factors exist, we need not address whether DUI is sufficiently grave on its own to justify a warrantless home arrest.

## II. *Altschuler* and *Griffith*

¶22 Wolters cites *City of Seattle v. Altschuler*, 53 Wn. App. 317, 766 P.2d 518 (1989), as support for his argument that Kingsley lacked exigent circumstances to make a warrantless arrest.

¶23 In *Altschuler*, two police officers activated their car's emergency equipment and pursued the defendant after observing him drive through a red light. *Altschuler*, 53 Wn. App. at 318. The defendant refused to stop and continued driving until he reached his home and pulled into his garage. *Altschuler*, 53 Wn. App. at 318. One officer got out of the car and ran into the garage as the driver attempted to close the garage door. *Altschuler*, 53 Wn. App. at 319. The officer arrested the defendant and the State charged him with resisting arrest, refusing to stop, and running a red light. *Altschuler*, 53 Wn. App. at 319. The court held that while there was a "hot pursuit," the lack of other factors indicating exigent circumstances rendered the warrantless home arrest unlawful. *Altschuler*, 53 Wn. App. at 322.

¶24 The State relies on *Griffith*. As previously mentioned, in that case, a police officer witnessed the defendant driving erratically and accordingly activated his emergency lights and followed the defendant. *Griffith*, 61 Wn. App. at 37. The defendant drove for two more blocks, pulled into her driveway, jumped out of her car, and started running toward her residence. *Griffith*, 61 Wn. App. at 37. The police officer chased the defendant and prevented her from closing the door to her house without actually entering her house. *Griffith*, 61 Wn. App. at 37. The police officer then smelled alcohol on the defendant's breath. *Griffith*, 61 Wn.

App. at 37-38. The officer asked for identification, and when the defendant could not find any in her house, she accompanied the officer to her car to find her driver's license. *Griffith*, 61 Wn. App. at 38. After conducting field sobriety tests, the officer arrested the defendant for DUI. *Griffith*, 61 Wn. App. at 38. In upholding the trial court's denial of the defendant's motion to suppress, the court held that (1) there was a hot pursuit, (2) the defendant was a fleeing suspect, and (3) there was a need to preserve evidence. *Griffith*, 61 Wn. App. at 42.

¶25 The present case is more akin to *Griffith*. Wolters distinguishes *Griffith* by noting that in *Griffith*, the court emphasized that the officer never invaded the sanctity of the suspect's home. While the *Griffith* court twice mentioned the fact that the police officer never entered the home, the court's analysis focused on the *Terrovona* factors. *Griffith*, 61 Wn. App. at 43-45. And in this case, four *Terrovona* factors exist in addition to the three factors that justified the warrantless arrest in *Griffith*. Furthermore, Wolters's DUI is a more serious offense than the traffic infraction in *Altschuler*. The district court did not err in ruling that exigent circumstances justified Kingsley's warrantless arrest of Wolters. *See Terrovona*, 105 Wn.2d at 645.

¶26 We affirm.

QUINN-BRINTNALL, C.J., and VAN DEREN, J., concur.