# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 79383-7-I |
| Petitioner, | |
| v. | DIVISION ONE |
| AYAN ABDIRAHIM MUMIN, | UNPUBLISHED OPINION |
| Respondent. | |

DWYER, J. — A district court jury convicted Ayan Mumin of driving under the influence. Mumin appealed her conviction to superior court, arguing that the district court erred in denying her motion to suppress evidence. The superior court reversed Mumin's conviction based on a lack of probable cause for her arrest. Because substantial evidence supported the district court's conclusion that probable cause existed to arrest Mumin, we reverse the superior court and reinstate Mumin's conviction.

I

Shortly after 3:00 a.m. on April 17, 2016, a witness called 911 to report a car driving erratically on I-5 near the West Seattle Bridge. Deputy Christopher Kyle located the car in question and watched it weave from side to side within its own lane and cross over into the neighboring lane multiple times. He stopped the car and identified the driver as Ayan Mumin. Deputy Kyle smelled the odor of

Citations and pin cites are based on the Westlaw online version of the cited material.

alcohol coming from the car and noticed that Mumin appeared lethargic and slow to respond.  After conducting a horizontal gaze nystagmus test, Deputy Kyle arrested Mumin for driving under the influence.

The State charged Mumin with driving under the influence.  Mumin moved to suppress all evidence obtained from the stop, arguing that Deputy Kyle lacked a reasonable suspicion to justify the traffic stop, and also lacked probable cause to arrest her.

At a preliminary hearing, Deputy Kyle testified that when he began following Mumin, his vehicle was approximately four to five car lengths to the rear of her car.  He observed Mumin weave "heavily" within her own lane.  He also observed her vehicle make three separate incursions into the neighboring lane in a little over a minute.  He noticed Mumin slow down when she passed a tow truck on the right shoulder, and continue to slow down even after her car had passed it.  He testified that, while it was not unusual for a driver to slow down when passing a tow truck, the fact that Mumin continued to slow down after passing the truck (instead of resuming normal speed) indicated that she was distracted or impaired.

Deputy Kyle initiated a traffic stop by activating his emergency lights.  Mumin came to a stop with her car partially blocking the right lane of I-5.  Using his public address system Deputy Kyle instructed Mumin several times to move her car onto the shoulder.  Mumin continued blocking the lane.

Upon approaching the passenger side of Mumin's car, Deputy Kyle noticed a passenger in the front seat and the smell of intoxicants. He asked

2

Mumin to provide her license, registration, and proof of insurance. As Mumin attempted to comply, Deputy Kyle noticed that she moved slowly and lethargically, and that her eyes were bloodshot, watery, and droopy. Mumin was not able to produce any of the requested documentation.

Deputy Kyle asked Mumin to get out of the car. He observed that she moved "slowly" and "deliberately" in response to his request. Deputy Kyle smelled alcohol on Mumin's breath and observed that she swayed "noticeabl[y]" as she stood. Deputy Kyle asked Mumin where she had been. She told him that she had been at a lounge and was heading to her home in Kent. Deputy Kyle asked Mumin how much alcohol she had consumed. Mumin said she had a vodka and a Mai Tai.

Mumin agreed to submit to field sobriety testing. Deputy Kyle performed the horizontal gaze nystagmus test. Mumin was unable to successfully complete the test. She would follow the stimulus with her eyes only momentarily and then look back at Deputy Kyle, despite his repeated instructions to maintain focus on the stimulus. At this point, Deputy Kyle placed Mumin under arrest.

Following the testimony at the pretrial hearing, the district court denied the suppression motion in an oral ruling. The district court made the following oral findings of fact:

(1) A 911 caller identified Mumin's car by using hazard lights;

(2) Deputy Kyle confirmed information from the phone call and observed Mumin both weave within her lane and commit lane incursions;

(3) Deputy Kyle smelled the odor of intoxicants from Mumin's car;

3

(4) There was a passenger in Mumin's car;

(5) Mumin's eyes were bloodshot and watery;

(6) Mumin was unable to locate her license, registration, and insurance documents in response to Deputy Kyle's request;

(7) Mumin moved slowly and deliberately to the front of her car, as though she were searching for her footsteps;

(8) Once separated from both the car and passenger, Deputy Kyle smelled the clear and noticeable odor of alcohol on Mumin's breath;

(9) Mumin swayed while standing throughout the entire interaction outside of her car;

(10) Mumin admitted to drinking a vodka and a Mai Tai, though no time frame was given;

(11) Deputy Kyle was an experienced law enforcement officer;

(12) Deputy Kyle was a drug recognition expert, and was trained and experienced in conducting field sobriety tests and in detecting alcohol and drugs;

(12) Deputy Kyle instructed Mumin on how to perform the horizontal gaze nystagmus test;

(13) Mumin appeared to understand the instructions, but unable to complete the horizontal gaze nystagmus test because she was unable to follow the stimulus with only her eyes.

The district court concluded that, given Deputy Kyle's experience and the objective facts he observed, he could reasonably conclude that Mumin was intoxicated.

A jury convicted Mumin as charged. The jury also returned a special verdict that Mumin had a blood alcohol concentration of 0.15 or higher within two hours of driving.

Mumin appealed the conviction to superior court. The superior court concluded that Deputy Kyle had a reasonable suspicion to justify the initial traffic stop. The superior court relied on the district court's findings that Mumin was driving at night on I-5, that a 911 caller reported Mumin's erratic driving, that Mumin was weaving within her lane and also crossed over into the neighboring lane three times, and that in Deputy Kyle's expert opinion, poor lane travel was an indicator for driving under the influence. The superior court found that Deputy Kyle had two reasons to stop Mumin: driving under the influence and violation of RCW 46.61.140, the lane travel statute.

However, the superior court concluded that Deputy Kyle lacked probable cause to arrest Mumin. The superior court reasoned as follows:

> After the traffic stop, Deputy Kyle learned that Ms. Mumin had consumed alcohol earlier in the day (3 hours earlier); there was smell of alcohol; she did not have her identification on her; she had watery/droopy eyes and she failed the HGN test. Deputy Kyle did not administer any other field sobriety tests and immediately arrested Ms. Mumin. The total time from the initial stop to the arrest was barely 3 minutes. Deputy Kyle failed to establish any facts that showed Ms. Mumin was impaired by that alcohol consumption at the time of driving. The facts that Ms. Mumin did not have her identification on her and that she was unable to follow the HGN stimulus in the dark, do not support a finding of probable cause because they do not tend to demonstrate that Ms. Mumin was intoxicated. . . . A reasonably cautious person would have needed to establish additional facts in order to believe that Ms. Mumin had been driving under the influence.

The superior court reversed Mumin's conviction and remanded to the district court for an order of dismissal.[1] We granted the State's motion for discretionary review.

II

RALJ 9.1 governs appellate review of a district court decision. State v. Weber, 159 Wn. App. 779, 785, 247 P.3d 782 (2011). We review the district court's decision de novo to determine whether that court made errors of law. Kyle v. Williams, 139 Wn. App. 348, 353, 161 P.3d 1036 (2007); RALJ 9.1. We review the district court's findings of fact for substantial evidence. Kyle, 139 Wn. App. at 353. We must accept the district court's express findings of fact and findings that may reasonably be inferred from the judgment if substantial evidence supports those findings. RALJ 9.1(b). We sit in the same position as the superior court and do not give deference to the superior court's decision. Weber, 159 Wn. App. at 787.

III

The sole issue is whether the district court's findings of fact support its conclusion that Deputy Kyle had probable cause to arrest Mumin.[2]

Under the Fourth Amendment to the United States Constitution and article 1, section 7 of the Washington Constitution, a warrantless arrest must be

---

[1] Citing State v. McKee, 193 Wn.2d 271, 438 P.3d 528 (2019), the State and Mumin acknowledge that this was erroneous and that the proper remedy was to remand to the district court with an order to suppress the evidence resulting from Mumin's arrest.

[2] The State argues separately that the superior court erred by engaging in a de novo review of the facts presented in the district court. But because we review the district court's decision and give no deference to the superior court's decision, how the superior court analyzed the case is immaterial.

supported by probable cause. State v. Bonds, 98 Wn.2d 1, 8-9, 653 P.2d 1024 (1982). Probable cause is an objective standard used to measure the reasonableness of an arrest. State v. Graham, 130 Wn.2d 711, 724, 927 P.2d 227 (1996). An officer has probable cause to arrest a person when the facts and circumstances within the arresting officer's knowledge are sufficient to cause a person of reasonable caution to believe a crime has been committed. Graham, 130 Wn.2d at 724. A determination of probable cause rests on "the totality of facts and circumstances within the officer's knowledge at the time of the arrest." State v. Fricks, 91 Wn.2d 391, 398, 588 P.2d 1328 (1979). The facts are not to be viewed in a manner divorced from their context in a "'divide-and-conquer'" approach. State v. Marcum, 149 Wn. App. 894, 907, 205 P.3d 969 (2009) (quoting United States v. Arvizu, 534 U.S. 266, 274, 122 S. Ct. 744, 151 L. Ed. 2d 740 (2002)). Probable cause requires more than "'a bare suspicion of criminal activity,'" but does not require facts that would establish guilt beyond a reasonable doubt. State v. Gillenwater, 96 Wn. App. 667, 670, 980 P.2d 318 (1999) (quoting State v. Terrovona, 105 Wn.2d 632, 643, 716 P.2d 295 (1986)). Whether probable cause exists is a legal question that we review de novo. State v. Wagner-Bennett, 148 Wn. App. 538, 541, 200 P.3d 739 (2009).

Here, the district court's findings of fact supported its conclusion that Deputy Kyle had probable cause to arrest Mumin. Mumin's car weaved frequently and significantly within its own lane, and crossed over into a neighboring lane. Mumin's eyes were bloodshot and watery, and her breath smelled like alcohol, which she admitted drinking. The smell of alcohol continued

7

when Mumin got out of the car, indicating that it was not coming from the car itself or Mumin's passenger. Mumin moved slowly and deliberately to the front of her car, appearing to Deputy Kyle as though she were struggling with her footing. Mumin swayed while talking with Deputy Kyle. Moreover, although Deputy Kyle explained to Mumin several times how to perform the horizontal gaze nystagmus test, Mumin was unable to follow his instructions. There was no evidence that the darkness affected Mumin's ability to perform the test. The totality of the circumstances was sufficient to warrant a reasonable person to believe that Mumin was under the influence of alcohol. Indeed, similar fact patterns have supported findings of probable cause. See, e.g., City of Coll. Place v. Staudenmaier, 110 Wn. App. 841, 844, 43 P.3d 43 (2002) (officer stopped defendant for speeding, defendant's eyes were watery and bloodshot and his breath smelled of alcohol, defendant admitted to drinking beer, and defendant swayed and performed poorly on field sobriety tests); State v. Smith, 130 Wn. 2d 215, 218-19, 922 P.2d 811 (1996) (defendant veered into a neighboring lane, defendant's breath smelled like alcohol, defendant had "poor finger dexterity" when looking for license and registration, and failed field sobriety tests); State v. Griffith, 61 Wn. App. 35, 37-38, 808 P.2d 1171 (1991) (defendant's car weaved within its own lane, crossed into a neighboring lane and hit a maintenance sign, defendant's breath smelled of alcohol, defendant could not find her purse or driver's license, and defendant had watery bloodshot eyes and slurred speech).

Mumin challenges three of the district court's findings of fact, claiming they are unsupported by substantial evidence. Mumin first challenges the district

8

court's finding that she swayed throughout the encounter. She contends that the in-car video does not show any swaying. But, although the poor lightning and Mumin's distance from the camera make it difficult to discern movement, Mumin visibly sways at least once. Deputy Kyle was in a much better position to observe Mumin's movements. The district court was entitled to find his observations credible. We do not review the district court's credibility determinations or the weight given to evidence. State v. Camarillo, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

Mumin next challenges the district court's finding that there was no time frame for when she had last consumed alcohol. The State acknowledges that Mumin can clearly be heard in the in-car video stating that she had her last drink three hours prior to the traffic stop. Although the finding is inaccurate, it does not materially affect the district court's conclusion of probable cause and thus, the inaccuracy is harmless. State v. Caldera, 66 Wn. App. 548, 551, 832 P.2d 139 (1992) (an erroneous finding of fact not materially affecting the conclusions of law is not prejudicial and is therefore harmless error).

Finally, Mumin challenges the district court's finding that she crossed into the adjacent lane three times. She contends that the in-car video shows that she "barely" drove on to the lane divider twice and "touched" the lane divider once with her tire. The district court found that Deputy Kyle observed "lane incursions" in addition to weaving within the lane. The district court did not elaborate on the number of times or the extent of the incursions. The district court's finding that

9

Deputy Kyle observed Mumin cross over into the neighboring lane was supported by substantial evidence.

We reverse the superior court's order and reinstate the district court's judgment and sentence.

_Dwyer, J._

WE CONCUR:

_Brennan, J_        _Andrus, A.C.J._