[No. 25853-2-I.   Division One.   November 18, 1991.]

JOHN ALTSHULER, *Appellant*, v. THE CITY OF SEATTLE, *Defendant*, E. HAYNES, ET AL, *Respondents*.

*Jeffrey L. Needle,* for appellant.

*Anne M. Bremner* and *Stafford Frey Cooper & Stewart,* for respondents.

GROSSE, C.J. — John Altshuler appeals from a judgment, entered following a jury verdict, dismissing tort and civil rights claims against Seattle Police Officer Edward Haynes. He contends the trial court erred in concluding that Officer Haynes was entitled to qualified immunity with respect to Altshuler's false arrest claims. We affirm.

This appeal arises from an incident that occurred on the evening of May 23, 1986, when Altshuler was arrested for, among other things, resisting arrest. The same incident was the subject of an earlier criminal appeal, *Seattle v. Altschuler*, 53 Wn. App. 317, 766 P.2d 518 (1989) (hereinafter *Altschuler* I), in which this court determined that Altshuler's arrest was unlawful and reversed his conviction.[1]

At about 9 p.m. on May 23, 1986, Seattle Police Officers Olney and Haynes observed Altshuler drive through a red light.[2] The officers followed Altshuler in their marked patrol car, eventually using flashing lights, siren, spotlights, and a P.A. system in an attempt to stop Altshuler's vehicle. Altshuler did not stop, but drove at a relatively constant 30 m.p.h. throughout the incident. According to the officers, Altshuler made eye contact and gestures indicating that he was aware of the officers' presence. There is no contention that Altshuler was driving in a reckless manner. Altshuler testified that he was listening to a cassette recording in his car and was unaware of the officers' attempts to detain him. At one point, Altshuler noticed flashing lights "way back" but found no reason to stop.

The officers followed Altshuler for about 12 blocks, where he turned into the driveway of his home. The officers pulled into the driveway behind Altshuler, essentially blocking any exit by the vehicle. Altshuler used his remote control to open the garage door, drove into the garage, and then attempted to close the garage door with the remote control. Just before the garage door closed, Officer Haynes entered the garage. Under circumstances that are hotly disputed, Officer Haynes and Altshuler struggled for a time in the dimly lit garage; at some point, Officer Haynes' nightstick connected with Altshuler's head. Altshuler maintains that

---

[1] We note the minor inconsistency in the spelling of appellant's last name and utilize the spelling found in the pleadings of this case.

[2] The parties' testimony below was more extensive than that before the court in *Altschuler* I.

for most of the time he was not aware that the person in his garage was a police officer.

Altshuler was eventually arrested and convicted of one count of refusal to stop, one count of disobeying a traffic signal, and one count of resisting arrest. On discretionary review, this court reversed Altshuler's resisting arrest conviction, holding that the arrest was unlawful because the officers lacked any lawful basis for arresting Altshuler in his home for a minor traffic offense without a warrant. *Altschuler* I, 53 Wn. App. at 322.

On July 29, 1986, Altshuler filed the instant lawsuit against Officer Haynes and the City of Seattle, raising claims of assault and battery, excessive force, intentional infliction of emotional distress, false arrest, and false imprisonment. Altshuler also alleged violations of civil rights under 42 U.S.C. § 1983.

All of the claims against the City of Seattle were eventually dismissed, leaving the tort and civil rights allegations remaining against Officer Haynes. The claims against Officer Haynes proceeded to trial. At the end of Officer Haynes' case in chief, the trial court granted Officer Haynes' motion for a directed verdict on the tort and civil rights claims related to the alleged false arrest. The trial court ruled that, as a matter of law, the law was not so clearly established at the time of Altshuler's arrest that a reasonable officer would have understood the arrest violated Altshuler's constitutional rights. The case was then submitted to the jury on the claim that Officer Haynes had used excessive force in effecting the arrest. The jury returned a verdict in favor of Officer Haynes.

■■ The sole issue raised on appeal is whether the trial court erred in concluding that Officer Haynes was entitled to qualified immunity. Qualified immunity is a judicially created doctrine that protects government officials from civil liability for performing discretionary functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 73 L.

Ed. 2d 396, 102 S. Ct. 2727 (1982). Thus, even where a constitutional violation is determined to have occurred, the official is entitled to immunity if the right was not "clearly established" or the official could reasonably have believed the specific conduct was lawful. The doctrine of qualified immunity seeks to balance the fact that damages may constitute the only realistic remedy to one injured by the violation of his or her constitutional rights with the concern that the risk of personal liability and harassing litigation could unduly inhibit officials in the discharge of their duties. *Anderson v. Creighton*, 483 U.S. 635, 638, 97 L. Ed. 2d 523, 107 S. Ct. 3034 (1987). Law enforcement officials carrying out duties associated with search and seizure are entitled to qualified immunity. *Malley v. Briggs*, 475 U.S. 335, 89 L. Ed. 2d 271, 106 S. Ct. 1092 (1986).

■ Once a defendant properly raises the issue of qualified immunity, the plaintiff bears the burden of proving that the right allegedly violated was "clearly established" at the time of the occurrence at issue. *Davis v. Scherer*, 468 U.S. 183, 197, 82 L. Ed. 2d 139, 104 S. Ct. 3012 (1984). If the plaintiff satisfies this burden, the official asserting qualified immunity must prove that the conduct at issue was objectively reasonable, even though it might have violated constitutional standards. *Romero v. Kitsap Cy.*, 931 F.2d 624, 627 (9th Cir. 1991). The official's subjective intentions are not relevant for purposes of qualified immunity. *Anderson v. Creighton*, 483 U.S. at 639.

■ The qualified immunity test encompasses three inquiries:

> (1) the identification of the specific right allegedly violated; (2) the determination of whether that right was so "clearly established" as to alert a reasonable officer to its constitutional parameters; and (3) the ultimate determination of whether a reasonable officer could have believed lawful the particular conduct at issue.

*Romero v. Kitsap Cy.*, 931 F.2d at 627. The first two inquiries are questions of law; the third inquiry, while ultimately a legal question, may require factual determina-

tions. *Romero v. Kitsap Cy.*, 931 F.2d at 628. If the right allegedly violated was not "clearly established" at the time of the defendant's action, then the action against the official must be dismissed, regardless of any factual dispute. *See Mitchell v. Forsyth*, 472 U.S. 511, 526, 86 L. Ed. 2d 411, 105 S. Ct. 2806 (1985); *see also Romero v. Kitsap Cy.*, *supra* (police officers entitled to qualified immunity where nature and scope of plaintiffs' right to gather shellfish not clearly established); *cf. Harper v. State*, 110 Wn.2d 873, 759 P.2d 358 (1988) (law regarding prisoner's rights to refuse antipsychotic drug treatment not clearly established), *rev'd on other grounds*, 494 U.S. 210, 108 L. Ed. 2d 178, 110 S. Ct. 1028 (1990).

■ In order to be "clearly established", the

> contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law *the unlawfulness must be apparent.*

(Citation omitted. Italics ours.) *Anderson v. Creighton*, 483 U.S. at 640. To overcome a qualified immunity defense, a plaintiff must do more

> than identify a clearly established legal test and then allege that the defendant has violated it. The plaintiff must demonstrate a substantial correspondence between the conduct in question and prior law allegedly establishing that the defendant's actions were clearly prohibited.

(Citation omitted.) *Hannula v. Lakewood*, 907 F.2d 129, 131 (10th Cir. 1990). In undertaking this analysis, we survey the "legal landscape" in order to determine whether it was "clearly established" on May 23, 1986, that Officer Haynes' warrantless entry and arrest violated Altshuler's constitutional rights. *See Ward v. County of San Diego*, 791 F.2d 1329, 1332 (9th Cir. 1986), *cert. denied*, 483 U.S. 1020 (1987).

■ In determining whether there was a violation of a "clearly established" right or law, a court must also identify the appropriate level of particularity to be applied. To recite

that it was "clearly established" at the time of Altshuler's arrest that warrantless entries into a home were presumptively unreasonable absent exigent circumstances states the principle too abstractly for purposes of ascertaining the existence of qualified immunity. As the Supreme Court has stated:

> The operation of this ["clearly established"] standard . . . depends substantially upon the level of generality at which the relevant "legal rule" is to be identified. For example, the right to due process of law is quite clearly established by the Due Process Clause, and thus there is a sense in which any action that violates that Clause (no matter how unclear it may be that the particular action is a violation) violates a clearly established right. Much the same could be said of any other constitutional or statutory violation. But if the test of "clearly established law" were to be applied at this level of generality, it would bear no relationship to the "objective legal reasonableness" that is the touchstone of *Harlow*. Plaintiffs would be able to convert the rule of qualified immunity that our cases plainly establish into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights. *Harlow* would be transformed from a guarantee of immunity into a rule of pleading. Such an approach, in sum, would destroy "the balance that our cases strike between the interests in vindication of citizens' constitutional rights and in public officials' effective performance of their duties," by making it impossible for officials "reasonably [to] anticipate when their conduct may give rise to liability for damages."

(Citation omitted.) *Anderson v. Creighton*, 483 U.S. at 639. Consequently, the "clearly established" standard must be applied in light of the specific circumstances confronting the official seeking qualified immunity. *See Anderson v. Creighton*, 483 U.S. at 641.

Altshuler maintains that at the time he was arrested, it was "clearly established" that *no* exigent circumstances could justify a warrantless entry into a home to arrest someone for commission of a minor offense. For this assertion, Altshuler relies primarily on *Welsh v. Wisconsin*, 466 U.S. 740, 80 L. Ed. 2d 732, 104 S. Ct. 2091 (1984), in which the Court stated that "application of the exigent-circumstances exception in the context of a home entry should rarely be sanctioned when there is probable cause to

believe that only a minor offense" has been committed. *Welsh*, 466 U.S. at 753. This general observation, however, must be viewed in the factual context of *Welsh*.

In *Welsh*, a witness observed the defendant driving erratically. The defendant eventually drove into a field, left his vehicle, and walked home. Shortly thereafter, police arrived at the scene and were informed by the witness that the defendant appeared to be drunk or sick. The police then went to the defendant's nearby residence and arrested him for a DWI offense, which under Wisconsin law was a noncriminal, civil forfeiture offense. *Welsh*, 466 U.S. at 754.

Under these circumstances, the Court, after noting that "most" courts had refused to permit warrantless home arrests for nonfelonious offenses, stated that "it is difficult to conceive of a warrantless home arrest that would not be unreasonable under the Fourth Amendment when the underlying offense is extremely minor." *Welsh*, 466 U.S. at 753. In deciding the case before it, however, the Court noted that there was no "hot pursuit" because the offense was not committed in the officer's presence. The Court also rejected the State's argument that the need to obtain the defendant's evanescent blood alcohol level justified the entry because the underlying offense was a noncriminal offense.

At the time of his arrest, courts in this state had not read *Welsh* in the manner now urged by Altshuler. In *State v. Komoto*, 40 Wn. App. 200, 697 P.2d 1025, *review denied*, 104 Wn.2d 1009, *cert. denied*, 474 U.S. 1021 (1985), the court upheld a warrantless residential entry and arrest for felony hit and run. While observing that *Welsh* indicates circumstances "are more clearly exigent where the offense is a 'serious crime . . .'" (*Komoto*, 40 Wn. App. at 212), the *Komoto* court also cited *Welsh* as rejecting a "bright line felony/nonfelony approach to warrantless entries" and left "for another day the question of whether a warrantless entry would be justified where the underlying offense is of a less serious nature." *Komoto*, 40 Wn. App. at 209 n.1. Similarly, in *State v. Ramirez*, 49 Wn. App. 814, 746 P.2d 344 (1987), the court held that the possible destruction of

marijuana was not an exigent circumstance that, standing alone, justified the warrantless entry into a hotel room for purposes of arresting for possession (or use). Because the court found *no* exigent circumstances, however, it declined to decide "whether the greater protections afforded by Const. art. 1, § 7 may impose an absolute bar on warrantless arrests in residential-like premises". *Ramirez*, 49 Wn. App. at 821 n.5. The court in *Altschuler* I also noted that whether there is "an absolute ban on warrantless home arrests for minor offenses has not been considered." *Altschuler* I, 53 Wn. App. at 320.

Here, the officers were confronted with circumstances that differed from those in *Welsh*. The offenses, albeit minor, were committed in the officers' presence, there was "hot pursuit", and Altshuler was arguably a "fleeing" suspect. The fact the court in *Altschuler* I subsequently rejected these reasons in the context of a criminal trial does not mean that Officer Haynes was not entitled to qualified immunity.

At the time of Altshuler's arrest, the validity of a warrantless entry depended on a consideration of a number of factors, including:

(1) a grave offense, particularly a crime of violence, is involved; (2) the suspect is reasonably believed to be armed; (3) there is reasonably trustworthy information that the suspect is guilty; (4) there is strong reason to believe that the suspect is on the premises; (5) the suspect is likely to escape if not swiftly apprehended; (6) the entry is made peaceably; (7) hot pursuit; (8) fleeing suspect; (9) danger to arresting officer or to the public; (10) mobility of the vehicle; and (11) mobility or destruction of the evidence.

*Altschuler* I, 53 Wn. App. at 320 (citing *State v. Terrovona*, 105 Wn.2d 632, 644, 716 P.2d 295 (1986)). While acknowledging the general test, the court in *Altschuler* I went on to eliminate, as a practical matter, "hot pursuit" and "fleeing suspect" as relevant factors in a case involving a minor offense.

■ As Altshuler notes, there need not be precedent with identical facts in order to defeat a claim of qualified immunity:

> We do not intend to suggest that an official is always immune from liability or suit for a warrantless search merely because the warrant requirement has never explicitly been held to apply to a search conducted in identical circumstances. But in cases where there is a legitimate question whether an exception to the warrant requirement exists, it cannot be said that a warrantless search violates clearly established law.

*Mitchell v. Forsyth*, 472 U.S. at 535 n.12. It is equally true, however, that the doctrine of qualified immunity recognizes that police officers must be granted some discretion in making decisions, the legality of which may eventually turn on seemingly minor factual distinctions. This is particularly true here where the propriety of the officer's action is subsequently assessed on a case-by-case basis by means of a multifactor test that seeks to balance the competing interests.[3] *Cf. Hocker v. Woody*, 95 Wn.2d 822, 826, 631 P.2d 372 (1981).

Here, as already noted, *Welsh* involved several arguably significant factual distinctions. Moreover, there continues to be some disagreement regarding the precise scope of *Welsh*. *See* 2 W. LaFave, *Search and Seizure* § 6.1, at 79 (2d ed. 1987 & Supp. 1991). In *State v. Griffith*, 61 Wn. App. 35, 808 P.2d 1171, *review denied*, 117 Wn.2d 1009 (1991), albeit under significantly different facts from those present here, the court takes issue with *Altschuler* I's reading of *Welsh*, at least under circumstances "when the suspect is fleeing to the home to avoid arrest." *Griffith*, 61 Wn. App. at 41. In addition, while recognizing that the gravity of the offense was a factor to be considered, the court did "not conclude that *Welsh* imposes an absolute ban on warrantless home arrests for 'minor offenses'." *Griffith*, 61 Wn. App. at 43 n.6. The fact that some disagreement remains regarding the scope of *Welsh* further supports the trial court's determina-

---

[3]When the "clearly established" standard must be applied in such contexts, some courts have held that there must be case law more closely analogous to the circumstances confronting the officials than might otherwise be required to defeat a claim of qualified immunity. *See, e.g., Benson v. Allphin*, 786 F.2d 268, 276 (7th Cir.), *cert. denied*, 479 U.S. 848 (1986).

tion that the law at the time of the arrest was not "clearly established".[4]

In summary, we conclude that, at the time of Altshuler's arrest, there was a legitimate question as to whether "hot pursuit" and "fleeing suspect", as well as the other factors arguably present, justified an exception to the warrant requirement. We cannot say that it was "readily apparent" in light of preexisting law that Officer Haynes' warrantless entry into Altshuler's garage was unlawful under the circumstances. Consequently, the trial court did not err in determining that Officer Haynes was entitled to qualified immunity.[5]

Altshuler's reliance on *Patzner v. Burkett*, 779 F.2d 1363 (8th Cir. 1985) is not persuasive. In *Patzner*, the court held that the defendant police officers were not entitled to qualified immunity for purposes of a § 1983 action where Patzner was arrested in 1983, prior to *Welsh*, under factual circumstances that the court characterized as indistinguishable from *Welsh*. The court determined that the illegality of Patzner's warrantless arrest in his home for a minor offense was "not seriously open to question at the time it occurred." *Patzner*, 779 F.2d at 1371. *Patzner* does not, however, involve hot pursuit or a fleeing suspect.

Judgment affirmed.

SCHOLFIELD and WEBSTER, JJ., concur.

Review denied at 118 Wn.2d 1023 (1992).

---

[4]*See also State v. Bolte*, 115 N.J. 579, 560 A.2d 644 (under facts similar to those in *Altschuler* I, court interpreted *Welsh* to require, at the very least, some threat to public safety, in addition to "hot pursuit", to justify a warrantless entry and arrest for minor traffic offenses), *cert. denied*, 493 U.S. 936, 107 L. Ed. 2d 320, 110 S. Ct. 330 (1989).

[5]In granting the motion for a directed verdict, the trial court also ruled as a matter of law that Officer Haynes was "acting with a subjective good faith intent." Because Officer Haynes was entitled to qualified immunity in light of the "clearly established" standard, we need not address this portion of the trial court's ruling.