[No. 49576-3-I.    Division One.    June 2, 2003.]

CATHERINE TORTES, *Appellant*, v. KING COUNTY, ET AL., *Respondents*.

2

4

*Philip A. Talmadge* (of *Talmadge & Stockmeyer, P.L.L.C.*) and *Carol Bratt* and *Hector Leal* (of *Law Offices of Carol Bratt, P.S.*), for appellant.

*Frederick M. Meyers, David D. Swartling, Charles W. Bailey,* and *Stephania C. Denton* (of *Mills Meyers Swartling*), for respondents.

*Franklin W. Shoichet* on behalf of Families and Friends of Violent Crime Victims and Missing Persons, amicus curiae.

6

GROSSE, J. — A common carrier owes the highest degree of care to its passengers commensurate with the practical operation of its business at the time and place in question. But as a general rule, a common carrier is not required to take measures to protect its passengers from the unforeseen intentional misconduct or criminal acts of third persons. The decision of the trial court is affirmed.

FACTS

On November 27, 1998, Silas Cool boarded a Metro bus headed southbound to downtown Seattle. As the bus approached the Aurora Avenue Bridge, Cool approached the bus driver, shot and killed the driver, and then immediately shot himself in the head. The driverless bus plunged off the edge of the Aurora Avenue Bridge. As it fell, the bus hit trees and the roof of an apartment building beneath the bridge and landed on the ground some 50 feet below. Catherine Tortes was among the passengers on the bus who sustained injuries.

Tortes sued King County, including the Department of Transportation and the Municipality of Metropolitan Seattle (Metro), King County Executive Ron Sims, and the Director of the King County Transportation Department, Paul Tolliver, seeking damages for their alleged negligence and claimed federal civil rights violations. Following extensive discovery and argument, Metro's motion for summary judgment was granted dismissing all claims. Tortes appeals. The usual standard for review of a summary judgment applies.[1]

---

[1] When reviewing an order of summary judgment brought under CR 56, this court engages in the same inquiry as the trial court. *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). The reviewing court "must consider all facts submitted and all reasonable inferences from the facts in the light most favorable to the nonmoving party." *Id.*

## DISCUSSION

■ ■ Negligence exists if a defendant breaches a duty owed to a plaintiff resulting in injury to that plaintiff, and there is a proximate cause between the breach and the injury.[2] "The existence of a duty is a question of law."[3]

Tortes claims the intentional criminal acts of Silas Cool were reasonably foreseeable and that Metro was negligent by breaching its duty to protect her from those acts.

■ " 'The general rule at common law is that a private person does not have a duty to protect others from the criminal acts of third parties.' "[4] This is an expression of the policy that a person is normally allowed to proceed on the basis that others will obey the law. It is also true that a common carrier owes the highest degree of care to its passengers " 'commensurate with the practical operation of its conveyance at the time and place in question' " and " 'consistent with the practical operation of its business.' "[5] However, the duty or standard of care owed by a common carrier is not one of strict liability. A common carrier is not

---

Summary judgment is appropriate if the pleadings, affidavits, depositions, and admissions on file show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. CR 56(c).

In its summary judgment motion, "the moving party bears the initial burden of showing the absence of an issue of material fact." If . . . the moving party is a defendant who meets the initial burden,

then the inquiry shifts to the party with the burden of proof at trial . . . . If . . . the [party] "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial", then the trial court should grant the motion.

*Right-Price Recreation, L.L.C. v. Connells Prairie Cmty. Council*, 146 Wn.2d 370, 381-82, 46 P.3d 789 (2002) (quoting *Young v. Key Pharms., Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986))).

[2] *Hutchins v. 1001 Fourth Ave. Assocs.*, 116 Wn.2d 217, 220, 802 P.2d 1360 (1991).

[3] *Folsom v. Burger King*, 135 Wn.2d 658, 671, 958 P.2d 301 (1998) (citing *Pedroza v. Bryant*, 101 Wn.2d 226, 228, 677 P.2d 166 (1984)).

[4] *Nivens v. 7-11 Hoagy's Corner*, 133 Wn.2d 192, 199, 943 P.2d 286 (1997) (quoting *Hutchins*, 116 Wn.2d at 223).

[5] *Tinder v. Nordstrom, Inc.*, 84 Wn. App. 787, 796, 929 P.2d 1209 (1997) (quoting *Houck v. Univ. of Wash.*, 60 Wn. App. 189, 194, 803 P.2d 47 (1991), and *Rathvon v. Columbia Pac. Airlines*, 30 Wn. App. 193, 202, 633 P.2d 122 (1981)).

the insurer of its passengers' safety, and negligence should not be presumed or inferred from the mere happening of an accident.[6] Metro has the duty to guard against foreseeable third party actions. But under the facts here, Cool's conduct was not foreseeable as a matter of law.[7]

The proximate cause of the accident resulting in Tortes' injury was the act of violence by Cool, which Metro, in the exercise of the highest degree of care, could not have anticipated. There is no evidence that Metro knew of the excessively dangerous propensities of Cool, the individual responsible for the crime, and evidence does not support the fact that there were similar crimes on other Metro buses, only that simple assaults had occurred. Metro cannot be held liable for a sudden assault that occurs with no warning and that is " 'so highly extraordinary or improbable as to be wholly beyond the range of expectability.' "[8]

■ Additionally, Tortes claims Metro should have provided a greater police presence on its buses; the buses should be equipped with driver enclosures; or that video surveillance cameras should be present on all Metro buses. However, Tortes does not establish a legal requirement that Metro must take these steps.[9] The trial court properly found that Tortes did not establish the existence of a duty or standard of care that requires a police presence on every bus, driver enclosures, or video surveillance cameras.

■ Moreover, in addition to establishing a duty, to sustain an action for negligence, a plaintiff must establish

---

[6] *Tinder*, 84 Wn. App. at 796.

[7] *See Niece v. Elmview Group Home*, 131 Wn.2d 39, 50, 929 P.2d 420 (1997) ("Intentional or criminal conduct may be foreseeable unless it is 'so highly extraordinary or improbable as to be wholly beyond the range of expectability.' " (quoting *Johnson v. State*, 77 Wn. App. 934, 942 , 894 P.2d 1366 (1995))).

[8] *Raider v. Greyhound Lines*, 94 Wn. App. 816, 819, 975 P.2d 518 (1999) (quoting *Niece*, 131 Wn.2d at 50); *see also Wilbert v. Metro. Park Dist. of Tacoma*, 90 Wn. App. 304, 308-09, 950 P.2d 522 (1998).

[9] *See Nivens*, 133 Wn.2d at 205; *Brown v. Crescent Stores, Inc.*, 54 Wn. App. 861, 867-68, 776 P.2d 705 (1989).

causation as an essential element.[10] Here there is no claim that Metro was the cause in fact of the accident. Rather, there was only speculation as to what Metro should have done to prevent the shooting and the accident.

Next, Tortes asserts a claim for civil rights violations against Metro, King County Executive Ron Sims, and Paul Tolliver, the Director of the King County Department of Transportation.[11] She alleges that the Fourteenth Amendment guarantees her right to be free of bodily injury resulting from governmental custom or practice that amounts to deliberate indifference to her safety and security.[12] She argues that King County and its agents are liable because they failed to heed incident reports of various bus drivers and others. She maintains that the court erred in dismissing her claims by determining there was no violation of a constitutionally protected right and further determining that there was no deliberate indifference in adopting allegedly inadequate security policies.

As to the claims against Metro and King County, Tortes argues that her injury was inflicted due to an inadequate policy, custom, or practice adopted by the county that reflects deliberate indifference to her constitutional rights. A plaintiff asserting a claim against a municipality or governmental agency under 42 U.S.C. § 1983 must establish four elements: (1) that he/she possessed a constitutional right of which he/she was deprived, (2) that the municipality had a policy or custom that was inadequate, (3) that this inadequacy resulted from a deliberate indifference to the plaintiff's constitutional right, and (4) that the

---

[10] *Miller v. Likins*, 109 Wn. App. 140, 144-45, 34 P.3d 835 (2001).

[11] 42 U.S.C. § 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

[12] *See City of Canton v. Harris*, 489 U.S. 378, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989); *Van Ort v. Estate of Stanewich*, 92 F.3d 831 (9th Cir. 1996).

policy or custom was the moving force behind the constitutional violation.[13] But a prima facie case under 42 U.S.C. § 1983 requires the plaintiff to show that a person, acting under the color of state law, deprived her of a federal constitutional or state-created property right without due process of law.[14] Here, Tortes fails to cite authority to support her proposition that riding public transportation without injury is a state or federally protected constitutional right.

■ Even if she could support the proposition, Tortes fails to prove a direct causal link between any Metro policy or custom and the alleged constitutional deprivation.[15] Her argument seems to be that Metro failed to protect her and therefore any safety policy was constitutionally deficient. We disagree. The degree of fault necessary to impose liability requires Tortes to prove that the allegedly inadequate policy or custom reflects deliberate indifference to her constitutional rights.[16] This deliberate indifference requires proof that the inadequate policy resulted from a deliberate or conscious choice by the municipality. It has been held that proof of simple or even gross negligence is insufficient to satisfy the requirement of "deliberate indifference."[17] It must be more. There is no evidence to support Tortes' claim.

■ Further, Tortes would also necessarily have to demonstrate that, through deliberate conduct, Metro was the moving force behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the

---

[13] *Van Ort*, 92 F.3d at 835.

[14] *Mission Springs, Inc. v. City of Spokane*, 134 Wn.2d 947, 962, 954 P.2d 250 (1998).

[15] *Harris*, 489 U.S. at 385.

[16] *Harris*, 489 U.S. at 392.

[17] *Harris*, 489 U.S. at 391; *Estate of Lee v. City of Spokane*, 101 Wn. App. 158, 168, 2 P.3d 979 (2000).

deprivation of civil rights.[18] But Tortes does not provide evidence in the record to support an allegation of deliberate indifference by Metro in adopting or implementing an inadequate safety policy or custom, and the trial court properly dismissed her § 1983 claim against Metro as a matter of law.

Tortes' claims against King County Executive Ron Sims and Director of the King County Department of Transportation Paul Toliver were also properly dismissed. These individual public officials are immune from personal liability under the doctrine of qualified immunity. It is preferred that a defendant's entitlement to qualified immunity be decided as a matter of law on summary judgment.[19]

The central purpose of qualified immunity is to protect public officials from interference with their duties and from potentially disabling threats of liability.[20] Government officials performing discretionary functions are immune from civil liability " 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' "[21] The "test" for qualified immunity is: (1) identification of the specific right being violated, (2) determination of whether the right was so clearly established as to alert a reasonable official as to its constitutional parameters, and (3) determination of whether a reasonable official would have believed that the policy or decision in question was lawful.[22] To penetrate a defense of claimed qualified immunity, a plaintiff must do more than identify a legal test and claim that a defendant has violated it. A plaintiff must demonstrate

[18] *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 404-05, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997).

[19] *Wilson v. State*, 84 Wn. App. 332, 349, 929 P.2d 448 (1996).

[20] *Staats v. Brown*, 139 Wn.2d 757, 772, 991 P.2d 615 (2000).

[21] *Altshuler v. City of Seattle*, 63 Wn. App. 389, 393, 819 P.2d 393 (1991) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)), *overruled on other grounds in Staats v. Brown*, 139 Wn.2d 757.

[22] *Altshuler*, 63 Wn. App. at 394; *see also McDade v. West*, 223 F.3d 1135, 1142 (9th Cir. 2000).

some nexus between the conduct in question and prior law establishing that the defendant's actions were clearly prohibited.[23]

Here, Tortes' unsupported, conjectural, and vague recitations to a right to due process or other constitutional right of personal safety and protection are insufficient to prove a clearly established right. Additionally, she fails to establish that the individual defendants here were personally involved in any alleged deprivation of federally or state protected constitutional rights. The trial court was correct in determining as a matter of law that Sims and Tolliver were entitled to dismissal from suit under the doctrine of qualified immunity.

Tortes claims the trial court erred by failing to admit evidence she submitted in opposition to summary judgment. Before the hearing, Metro moved to strike much of the material submitted by Tortes in opposition to summary judgment. The trial court denied most of the motion but granted the motion to strike selected statements of Tortes' expert, Bob Wuorenma, as the statements were either outside his area of expertise or purely legal conclusions. The trial court also struck a 1993 article from the *Seattle Weekly* and a document allegedly from the Federal Transit Administration. The trial court also struck Tortes' affidavit in response to the motion for summary judgment.

This court reviews trial court rulings on motions to strike for an abuse of discretion.[24] "Experts may not offer opinions of law in the guise of expert testimony."[25] The opinion of an expert must pertain to the facts of the particular case. Further, under CR 56(e), affidavits must set forth facts admissible in evidence that are made on personal knowledge.

---

[23] *Altshuler*, 63 Wn. App. at 395.

[24] *Stenger v. State*, 104 Wn. App. 393, 407-08, 16 P.3d 655 (2001) (citing *King County Fire Prot. Dist. No. 16 v. Hous. Auth.*, 123 Wn.2d 819, 826, 872 P.2d 516 (1994)).

[25] *Stenger*, 104 Wn. App. at 407 (citing ER 704 cmt.; *King County Fire Prot. Dist. No. 16*, 123 Wn.2d at 826 n.14).

In his affidavit, Wuorenma purported to be, and likely is, an expert on security and law enforcement. However, Wuorenma does not claim to have any expertise regarding the actual standard of care applicable to public transit operators. The trial court properly found that his testimony pertaining to the foreseeability of events, or whether Metro took adequate measures or should have taken additional action, was outside of his area of expertise.[26] Further, Wuorenma's statements are conclusions of law, which offer legal opinions on the ultimate legal issue, and therefore are not proper testimony under ER 702 and 704.[27] Although testimony by an expert embracing the ultimate issue may be allowed, an affidavit must be disregarded to the extent that it contains purely legal conclusions.

■ Further, although the question of foreseeability is usually one for the trier of fact, in this case the circumstances of the injury are so highly extraordinary and beyond the range of expectability that foreseeability is not correctly framed as an issue of fact. Rather, it is a conclusion of law. Under the facts of this case, foreseeability became the ultimate legal issue before the trial court at summary judgment. Because the statements of Wuorenma, struck by the trial court, consisted solely of legal conclusions the statements are not admissible and cannot by their nature create an issue of material fact when they contain only legal conclusions.[28] The trial court did not abuse its discretion in excluding Wuorenma's opinion testimony that Cool's murder of the bus driver was foreseeable.

■ Tortes claims the trial court erred in striking exhibit 5 to the declaration of her attorney. This exhibit is from an October 1993 article in the *Seattle Weekly* entitled "Bullies on the Bus" which was proffered in support of her opposition to the motion for summary judgment. But the five-year-old article is of little relevance and does not tend

[26] ER 701, 702; *Reese v. Stroh*, 128 Wn.2d 300, 305-06, 907 P.2d 282 (1995).

[27] *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 344, 858 P.2d 1054 (1993).

[28] *Stenger*, 104 Wn. App. at 408-09.

to make the existence of any fact that is of consequence in this action more or less probable.[29] Further, to the extent the *Seattle Weekly* article is offered to prove the truth of the matters stated therein, it is properly excluded as hearsay.[30] Tortes claims she is not attempting to prove that the incidents in the article actually happened, but only that Metro was on notice that such incidents were being alleged and, therefore, the accident and resulting injuries at issue here were foreseeable. We disagree. To be relevant to the case, any incidents providing notice would necessarily have to have happened. If the incidents actually happened, then the article was submitted for the truth of that fact, and, therefore, the article is certainly hearsay. The trial court did not err in striking the exhibit.

Tortes asserts the trial court erred in striking exhibit 23, a 1997 document published by the Transit Cooperative Research Program entitled "Improving Transit Security." The program was established under the alleged sponsorship of the Federal Transit Administration. Tortes claims the document is admissible under ER 902(e) and is "self-authenticating" because it was issued by a public authority. Further, she claims it is an exception to the hearsay rule for learned treatises under ER 803(a)(18).

But upon review, we hold that the trial court did not abuse its discretion in striking the document on the grounds that it is not properly authenticated, that it is irrelevant to the facts of the case, and that it constitutes inadmissible hearsay.[31]

Additionally, Tortes claims the trial court erred in striking her own affidavit reciting the injuries she sustained. But the affidavit is not relevant to the motion on summary judgment based on Tortes' inability to prove the elements of

[29] ER 401, 402.

[30] ER 802.

[31] Even if we were to determine that the trial court erred in striking the document, the article does not assist Tortes and her claims of negligence or foreseeability. For the most part, the article concerns effective strategies toward a safer transit environment.

duty and causation. The affidavit was stricken because it did not pertain to the issues before the trial court at the time. There was no abuse of discretion by the trial court.

The decision of the trial court dismissing the claims of Catherine Tortes is affirmed.

The remainder of this opinion has no precedential value. Therefore, it will be filed for public record in accordance with the rules governing unpublished opinions.

BAKER and APPELWICK, JJ., concur.

Review denied at 151 Wn.2d 1010 (2004).